**USALLIANCE FEDERAL CREDIT UNION, Plaintiff**

v.

**CUMIS INSURANCE SOCIETY, INC. Defendant**

No. 03 CIV. 10317(SCR).

United States District Court, S.D. New York.

Oct. 4, 2004.

Mitchell B. Pollack, Tarrytown, NY, for Plaintiff.

Kimberlea Shaw Rea, Bleakley Platt & Schmidt, LLP, White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

The USAlliance Federal Credit Union (the "Plaintiff") filed this action against CUMIS Insurance Society, Inc. (the "Defendant") in the Supreme Court of the State of New York, County of Westchester, on November 21, 2003. The defendant removed this action to this court on December 31, 2003. The defendant has moved to dismiss two of the four causes of action included in the Complaint, as well as the Plaintiff's claim for punitive damages. For the following reasons, the Defendant's partial motion to dismiss is GRANTED.

### I. Background

The Plaintiff is a federally chartered credit union having a principal place of business in Rye, New York. *See* COMPL. ¶ 1. The defendant sells employee bond coverage and other insurance products to credit unions throughout the United States. *Id.* at ¶ 3. The defendant's principal place of business is in Madison, Wisconsin, but it maintains offices in New York, where it is authorized and licensed to sell various insurance products. *Id.* at ¶¶ 2, 3.

The defendant issued an indemnity bond policy (the "Policy") to the Plaintiff which covered, *inter alia,* losses suffered by the Plaintiff due to employee dishonesty and unfaithful performance. *See id.* at ¶ 6. On June 27, 2002, the Plaintiff submitted to the Defendant a proof of loss for approximately $6.9 million based upon the alleged unfaithful and dishonest conduct of its former Vice President, Albert Menard. *See id.* at ¶ 9. The defendant denied the Plaintiff's claim by letter dated April 10, 2003. *Id.* at ¶ 13.

Plaintiff subsequently filed suit against the defendant, alleging four causes of action: 1. breach of the employee dishonesty provisions of the insurance policy; 2. breach of the faithful performance provisions of the policy; 3. bad faith; 4. violation of New York General Business Law § 349. The Defendant moved to dismiss the third and fourth causes of action, as well as Plaintiff's request for punitive damages on the first two causes of action.

### II. Analysis

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court accepts as true all material factual allegations in the complaint and draws all reasonable inferences in favor of the non-movant. *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996). We may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts

in support of [its] claim which would entitle [it] to relief." *Id.* at 891.

### A. The Plaintiff's Third Cause Of Action Should Be Dismissed Because New York Law, Which Is Applicable Here, Does Not Recognize A Claim For Bad Faith Denial Of Insurance Coverage.

■ Plaintiff's claim for bad faith denial of coverage is crafted as an independent cause of action in its complaint but, as the Defendant correctly points out, an independent tort action for bad faith denial of insurance coverage is not recognized in New York. *See Wiener v. Unumprovident Corp.*, 202 F.Supp.2d 116, 123 (S.D.N.Y. 2002), *citing New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (1995). Plaintiff responds by arguing that this court should apply Wisconsin law, which does recognize a separate cause of action for bad faith, *see Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978), to the Plaintiff's claim. The Defendant insists that New York law applies.

■ Federal courts sitting in diversity must follow choice of law rules prevailing in the states in which they sit. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In choice of law conflicts involving tort actions, New York applies the "interest analysis" test. *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 683 (1985). Under this approach, "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law

in conflict." *Id.* at 684 (internal quotation omitted). The cause of action for bad faith is a conduct-regulating (rather than loss-allocating) rule and, as such, the locus of the tort is of primary importance in resolving related choice of law questions. *See Northwestern Mut. Life Ins. Co. v. Wender*, 940 F.Supp. 62, 66 (S.D.N.Y.1996).

■ In essence, the New York Plaintiff in this case is requesting that a New York court apply the Plaintiff-favoring law of the Defendant's jurisdiction. Although Wisconsin does have interests in this case, stemming largely from the fact that the defendant is incorporated, and has its principal place of business, in that state, this court finds that New York's interests are stronger. Although Wisconsin clearly has an interest in holding insurance companies to the liability rules of that state, it is reasonable to assume that Wisconsin's rules are designed primarily, if not entirely, to regulate the Wisconsin market and protect Wisconsin residents. On the other hand, New York certainly has an interest in determining the rules regulating all insurance companies—whether foreign or domestic—that operate in the state and serve New York consumers.[1]

Although it is admittedly much more difficult to determine the locus of a tort in an interstate insurance coverage dispute than in, for example, a car accident case, the tort in this case is more appropriately located in New York. As the court found in *Wender*, the Defendant's conduct is regulated in New York and, therefore, "what [it] does in New York with New York consumers, whether that consists of sending a policy to New York or denying benefits, occurs in New York." *See* 940 F.Supp.

---

1. The fact that New York does not recognize a bad faith cause of action in no way implies that it has not formulated a rule in this area.

The absence of a cause of action is every bit as much a conduct-regulating rule as the existence of one.

at 67 (applying New York law to dismiss a claim of bad faith in a case with facts closely analogous to those in this case). Moreover, while the parties in this case may well have corresponded from their respective locations, "the effect of [its] actions occur[red] in New York." *Id.* For these reasons, the tort occurred there as well.

Plaintiff argues that *Wender* is distinguishable because, according to the Plaintiff, the Defendant's denial of claim in this case was the result of a general corporate policy, rather than a case-specific determination. The Plaintiff has not cited any case to suggest that this difference is relevant from a choice of law standpoint, nor can the court conceive of how this fact, if true, would alter the conclusion that New York's interests are stronger or that the effect of the conduct relevant to this case was primarily felt in New York. Finding that New York law applies, the Plaintiff's third cause of action for bad faith is dismissed.[2]

## B. The Plaintiff's Fourth Cause of Action Should Be Dismissed Because The Plaintiff Has Not Alleged, With Requisite Specificity, That The Defendant's Conduct Was Consumer–Oriented

■ To state a claim under New York General Business Law § 349, a plaintiff must allege: (1) acts or practices that are consumer-oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts. *See Lava Trading, Inc. v. Hartford Fire Ins. Co.,* 326 F.Supp.2d 434, 438 (S.D.N.Y. 2004). The Defendant argues that the alleged acts at issue in this case are not "consumer oriented," but rather relate to a private contract dispute regarding insurance coverage. *See* Defendant's Reply at 5.

In order for conduct to be considered "consumer oriented," the defendant's conduct must have a broad impact on consumers at large. *See New York Univ. v. Con-*

---

**2.** The Court's decision to dismiss the Plaintiff's cause of action for bad faith also necessitates that it dismiss the Plaintiff's claim for punitive damages on its first and second causes of action. *See New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995) (Punitive damages are available as an additional remedy when the claim arises from a breach of contract only when the defendant's conduct is actionable as an independent tort); *Wiener v. Unumprovident Corp.,* 202 F.Supp.2d 116, 124 (S.D.N.Y.2002) (same). In its Reply Brief, the Plaintiff indicates that, should the court dismiss the Plaintiff's bad faith cause of action, the Plaintiff would move to amend its complaint to allow for consequential damages on the grounds that the Defendant's denial of coverage was in bad faith. *See* Plaintiff's Opp. at 7. Should the Plaintiff make such a motion, it is likely to be denied on the grounds that such a motion would be futile. As Plaintiff's point out, there is case law supporting a claim for consequential damages in a breach of insurance contract case. *See Ac-*

*quista v. N.Y. Life Ins. Co.,* 285 A.D.2d 73, 730 N.Y.S.2d 272, 279 (N.Y.App.Div.2001). But the weight of authority has rejected *Acquista. See, e.g., Royal Ins. Co. of Am. v. Deep Sea Int'l,* 2004 U.S. Dist. LEXIS 5948, at n. 4 (S.D.N.Y.) (citing cases for the proposition that courts in this district have "declined to follow" *Acquista* ); *Cont'l Info. Sys. Corp. v. Fed. Ins. Co.,* 2003 WL 145561, *2, 2003 U.S. Dist. LEXIS 682, at *11–12 (S.D.N.Y. Jan. 17, 2003) (rejecting *Acquista* as inconsistent with New York Court of Appeals decisions in *New York University v. Continental Insurance Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) and *Rocanova v. Equitable Life Assurance Society of the United States,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)). Were the Plaintiff to allege, however, that certain consequential damages were within the contemplation of the parties at the time of contracting, the result may well be different. *See Lava Trading, Inc. v. Hartford Fire Ins. Co.,* 326 F.Supp.2d 434 (S.D.N.Y.2004).

*tinental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (1995). The conduct need not be repetitive or recurring, but private contract disputes unique to the parties do not fall within the ambit of the statute. In most cases, courts have held that disputes between policy holders and insurance companies are private contractual disputes that lack the consumer impact necessary to state a claim under § 349, *see Lava Trading*, 326 F.Supp.2d at 439, but courts have found this requirement satisfied where plaintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders. *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp. 732, 739 (S.D.N.Y.1990) aff'd in part, question certified in part, 977 F.2d 47 (2d Cir.1992), certification withdrawn, 984 F.2d 69 (2d Cir.1993).

■ Apparently aware of these principles, the Plaintiff has alleged that "CUMIS' treatment of the Credit Union...is not unique, but is part of a pattern of conduct that is aimed at the public generally ...." COMPL. ¶ 122. Plaintiff's allegations, however, are not specific enough to properly allege consumer-oriented impact. While Section 349 does not require plaintiffs to allege fraud, and therefore meet the particularity requirements of Fed.R.Civ.P. 9(b), plaintiffs stating a claim

under this provision must allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim. *See Lava Trading*, 326 F.Supp.2d at 438. Thus, conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under Section 349 in the absence of factual allegations in support thereof. *See id. See also Grand Gen. Stores v. Royal Indem. Co.*, 1994 WL 163973, *4, 1994 U.S. Dist. LEXIS 5251, at *11–12 (S.D.N.Y. Apr. 22, 1994). Any other rule would effectively permit a plaintiff to convert almost any garden-variety breach of contract cause of action into a violation of Section 349. *See Lava Trading*, 326 F.Supp.2d at 438 (internal citation omitted).

■ Plaintiff's allegations, like the statement quoted above, are conclusory and do not include, with any specificity, the acts that form the basis of its claim under this section.[3] Plaintiff seems to cite the District Court's decision in *Riordan* as authority for the proposition that conclusory allegations are sufficient, *see* PLAINTIFF'S OPP. at 18, but the allegations pleaded in *Riordan*, and cited by the District Court, are far more detailed than the Plaintiff's allegations in this case. *See Riordan*, 756 F.Supp. at 736.[4]

---

**3.** Specifically, plaintiffs also allege that, "[g]iven [the Defendant's] control of the market for credit union bond coverage, CUMIS' Corporate Decision and resulting conduct has and will continue to have a broad negative impact on consumers-at-large," and that "CUMIS has acted in a deceptive or misleading and material way in representing the quality of its policies and in representing that it would indemnify policy-holders on claims that satisfy the standard for coverage under the terms of its policies." COMPL. ¶ 121. These allegations contain little in the way of specific acts or practices to bolster Plaintiff's claim of a general policy impacting customers at large.

**4.** In particular, the Plaintiffs in *Riordan* alleged "a litany of conduct constituting deceptive business practices" including the Defendant's practice of refusing to settle claims piecemeal even where agreement could be had on the settlement value of the claim, valuing claims for adjustment at present cash value despite the insured's election of replacement coverage, requiring insureds to replace items out of their own funds before it would advance monies on a replacement value basis, training adjustors without regard to the requirements of New York Insurance Law, and compelling policyholders to institute suits to recover amounts due under policies by offering substantially less than the amounts ulti-

Plaintiff also appears to argue that the Defendant's actions were consumer oriented because the Plaintiff is a credit union with reserves consisting of "nothing but the savings of its members," and therefore the membership should be considered consumers of insurance services. *See* PLAINTIFF's OPP. at 19. Plaintiff's argument is unconvincing. The transaction in this case was not between the Defendant and the individual members of the Plaintiff credit union, and the members were not purchasing insurance services when they deposited their money. Concluding otherwise would imply that any transaction between an insurer and a publicly traded company was consumer oriented simply because the company was owned by dispersed shareholders. Such an interpretation of Section 349, however, would obliterate the distinction at the root of this provision.

Therefore, Plaintiff's fourth cause of action should also be dismissed.

### III. Conclusion

For the foregoing reasons, the Defendant's partial motion to dismiss is GRANTED.

It is so ordered.

mately recovered in suits brought by them.     *Riordan,* 756 F.Supp. at 736.