[858 NE2d 1140, 825 NYS2d 435]

BEATRICE PUTTER, Individually and as Executrix of MILTON PUTTER, Deceased, Respondent, v NORTH SHORE UNIVERSITY HOSPITAL et al., Appellants.

Argued October 17, 2006; decided November 16, 2006

**POINTS OF COUNSEL**

*Martin Clearwater & Bell LLP,* New York City (*Ellen B. Fishman, Anthony M. Sola* and *Rosaleen T. McCrory* of counsel), for appellants. I. The Appellate Division erred in reversing the Supreme Court order granting defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (5). This medical malpractice action is time-barred as it was not commenced within the statutory period of limitations set forth in CPLR 214-a. (*Nykorchuck v Henriques,* 78 NY2d 255; *Matter of Daniel J. v New York City Health & Hosps. Corp.,* 77 NY2d 630.) II. Plaintiffs cannot satisfy essential elements of the doctrine of equitable estoppel. In particular, the Appellate Division erred in finding that plaintiffs exercised due diligence in seeking the facts on which their claims are based and that they reasonably relied on the statements attributed to Dr. Farber in failing to commence a timely action. (*McIvor v Di Benedetto,* 121 AD2d 519; *Zumpano v Quinn,* 6 NY3d 666; *Estate of Boyle v Smith,* 15 AD3d 338; *Simcuski v Saeli,* 44 NY2d 442; *General Stencils v Chiappa,* 18 NY2d 125; *Fuchs v New York Blood Ctr.,* 275 AD2d 240, 95 NY2d 769; *Edmonds v Getchonis,* 150 AD2d 879; *Gleason v Spota,* 194 AD2d 764; *Nichilo v B.F.N. Realty Assoc., Inc.,* 19 AD3d 666; *Kuhlman v Westfield Mem. Hosp.,* 212 AD2d 1007.) III. The Appellate Division erred in finding that plaintiffs satisfied the standard set forth in CPLR 3211 (d) and that they demonstrated that further discovery is appropriate to allow them to develop their estoppel claim. (*Peterson v Spartan Indus.,* 33 NY2d 463; *Ramsay v Mary Imogene Bassett Hosp.,* 113 AD2d 149, 67 NY2d 608; *Klein v Jamor Purveyors,* 108 AD2d 344; *Mandel v Busch Entertainment Corp.,* 215 AD2d 455; *Roswick v Mount Sinai Med. Ctr.,* 22 AD3d 409; *Chopra v Pella*

*Window Corp.,* 2 AD3d 1087; *Davis v Smith Corp.,* 262 AD2d 752; *Hoffman v Pelletier,* 6 AD3d 889; *Matter of Toal v Staten Is. Univ. Hosp.,* 300 AD2d 592; *Matter of Perez v New York City Health & Hosps. Corp.,* 84 AD2d 789.)

*Jacob D. Fuchsberg Law Firm, LLP,* New York City (*Alan L. Fuchsberg* and *Danielle George* of counsel), for respondent. I. The Appellate Division correctly applied *Simcuski v Saeli* (44 NY2d 442 [1978]) in holding that defendants' motion to dismiss the complaint as time-barred should have been denied. (*Owen v Mackinnon,* 6 AD3d 684; *Castagnazzi v Schlecker,* 129 AD2d 605; *Schirano v Paggioli,* 99 AD2d 802; *Vigliotti v North Shore Univ. Hosp.,* 24 AD3d 752; *Matter of Eberhard v Elmira City School Dist.,* 6 AD3d 971; *Doe v North Shore Univ. Hosp.,* 28 AD3d 603.) II. Plaintiffs have sufficiently alleged fraudulent concealment, due diligence and justifiable reliance. (*Estate of Boyle v Smith,* 15 AD3d 338, 5 NY3d 703; *Gleason v Spota,* 194 AD2d 764; *Marshall v Duryea,* 172 AD2d 726; *Otero v Presbyterian Hosp. in City of N.Y.,* 240 AD2d 279; *Hoemke v New York Blood Ctr.,* 912 F2d 550; *Vigliotti v North Shore Univ. Hosp.,* 24 AD3d 752.) III. The Appellate Division properly found that further discovery was warranted. (*Castagnazzi v Schlecker,* 129 AD2d 605; *Nappi v North Shore Univ. Hosp.,* 31 AD3d 509; *Dillenbeck v Hess,* 73 NY2d 278.) IV. The cases cited by defendants-appellants are distinguishable from the case at bar. (*Zumpano v Quinn,* 6 NY3d 666; *General Stencils v Chiappa,* 18 NY2d 125; *Simcuski v Saeli,* 44 NY2d 442; *McIvor v Di Benedetto,* 121 AD2d 519; *Gleason v Spota,* 194 AD2d 764; *Jordan v Ford Motor Co.,* 73 AD2d 422; *Rockwell v Ortho Pharm. Co.,* 510 F Supp 266; *Erbe v Lincoln Rochester Trust Co.,* 13 AD2d 211; *Fuchs v New York Blood Ctr.,* 275 AD2d 240, 95 NY2d 769; *Contento v Cortland Mem. Hosp.,* 237 AD2d 725, 90 NY2d 802.)

**OPINION OF THE COURT**

CIPARICK, J.

The issue presented in this medical malpractice action is whether plaintiff is entitled to invoke the doctrine of equitable estoppel to toll the 2½-year statute of limitations. We conclude, as a matter of law, that she may not and that defendants' motion pursuant to CPLR 3211 (a) (5) to dismiss for failure to timely commence the action was properly granted.

Milton Putter* had quadruple bypass surgery at defendant North Shore University Hospital in November 1993. Defendant Dr. Michael Hall performed the surgery. Several weeks later, during routine postoperative testing by his primary care physician Dr. Leslie Cooperman, Putter learned that his liver enzymes were elevated. Following additional tests, including a liver biopsy, Putter was diagnosed with hepatitis C—a condition he did not have prior to the surgery. At his examination before trial, Putter testified that Dr. Cooperman had opined that he most likely contracted the disease during surgery. Moreover, Dr. Cooperman advised Putter that another of his patients had recently contracted hepatitis C—likewise after an operation performed by Dr. Hall at North Shore. Putter's three sons, who are medical professionals—two physicians and one physician's assistant—also concluded that Putter had contracted the disease in either the hospital or the operating room. In fact, when asked at his deposition if he had spoken with his sons about whether he was infected with hepatitis C during the surgery, Putter responded, "I think I did and it seemed pretty obvious."

Based on this information, in 1994, Putter contacted Dr. Bruce Farber, chief of infectious diseases at North Shore. Putter inquired as to how he had contracted hepatitis C, since he had not received any blood products during his surgery. Farber allegedly told him that "there are a percentage of people who get Hepatitis C from quote unknown sources." Putter later asserted in an affidavit that Farber had told him that *his* was a case where the hepatitis C was of unknown origin. Putter did not pursue any further investigation.

In 2002, long after the 2 1/2-year statute of limitations had expired, the New York State Department of Health (DOH) and the Nassau County DOH contacted Putter and informed him that North Shore was under investigation. The County DOH wrote a letter to the State DOH stating that it had identified 10 patients who had developed hepatitis C after cardiac surgery at North Shore between 1993 and 2001. Eight of those patients had surgery performed by the same doctor—Dr. Hall. The County DOH letter also stated that North Shore was aware of three of the cases, but did not report them to either DOH until after the investigation began. The letter further stated that sev-

---

* Milton Putter died during the pendency of this action. His wife, Beatrice Putter, is maintaining this appeal both individually and as the executor of his estate.

eral individuals at the hospital, including the director of infection control, had been aware for several years that the surgeon had hepatitis C. Putter also asserted that DOH advised him that epidemiological testing had revealed that he and Dr. Hall had the same type hepatitis C.

Putter commenced this suit in August 2002 alleging causes of action including medical malpractice, lack of informed consent and negligent hiring. Defendants answered and subsequently moved to dismiss the complaint pursuant to CPLR 3211 (a) (5) for failure to commence the action within the applicable statute of limitations. Putter opposed the motion, arguing that defendants should be equitably estopped from raising the statute of limitations as a defense. Supreme Court granted defendants' motion to dismiss, finding that Putter had sufficient timely knowledge to place him under a duty to inquire and to determine the relevant facts before the statute of limitations expired.

A majority of the Appellate Division reversed and reinstated the complaint. The Court found that although Putter did not have enough information to defeat defendants' motion, dismissal of the complaint was premature because with additional discovery under CPLR 3211 (d) Putter might be able to demonstrate that equitable estoppel was appropriate. Two Justices dissented and voted to affirm, finding that Putter did not establish that he was entitled to equitable estoppel, in that he did not demonstrate any active concealment by defendants or that he justifiably relied on any misrepresentations. The Appellate Division granted defendants leave to appeal, certifying the following question: "Was the decision and order of this court dated January 10, 2006, properly made?" We answer the question in the negative and now reverse.

We have recently reaffirmed that equitable estoppel will preclude a defendant from using the statute of limitations as a defense " 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding' " (*Zumpano v Quinn*, 6 NY3d 666, 673 [2006], quoting *General Stencils v Chiappa*, 18 NY2d 125, 128 [1966]). A plaintiff seeking to apply the doctrine of equitable estoppel must "establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit" (*Zumpano*, 6 NY3d at 674). Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of

limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the defendant. That is not the case here.

Although we have previously applied equitable estoppel in the context of medical malpractice cases, this case can be distinguished from the situation presented in *Simcuski v Saeli* (44 NY2d 442 [1978]). In *Simcuski*, the defendant doctor negligently injured the plaintiff during surgery. Although allegedly aware of his negligence and of the potential permanent damage resulting from the injury, the doctor advised the plaintiff that her impairment was temporary and would be resolved if she engaged in the prescribed physiotherapy (*see Simcuski*, 44 NY2d at 447). It was nearly four years later that another physician advised her of the actual cause of her injury. We concluded that equitable estoppel might be appropriate in that case, assuming that plaintiff exercised due diligence in bringing her claim after discovery, because plaintiff reasonably relied on her treating physician's misrepresentations as to the nature of her injury (*see Simcuski*, 44 NY2d at 449).

Here, by contrast, Putter was aware of his condition within a few months of the surgery and was advised by four medical professionals—his primary care physician and his three sons—that he most likely contracted hepatitis C either in the hospital or during surgery. Dr. Cooperman also informed Putter that another patient had recently contracted hepatitis C after surgery at the same hospital with the same surgeon. Further, Putter indicated that it "seemed pretty obvious" that he had contracted the disease during surgery. Although the question of whether a defendant should be equitably estopped is generally a question of fact, here, given Putter's level of awareness and subsequent inaction, equitable estoppel is inappropriate as a matter of law.

Putter had sufficient information available to require him to investigate whether there was a basis for a medical malpractice action. Putter never attempted to speak with the surgeon, Dr. Hall, concerning the operation—specifically, whether he could have contracted the disease during surgery. There is likewise no indication that he asked Dr. Farber about any other patient contracting hepatitis C, despite the information he had already received from Dr. Cooperman. Under these circumstances, even if Farber told Putter his disease was from "unknown sources," any reliance Putter placed on this conversation with Farber—a person affiliated with the defendant hospital—was unreasonable. Farber's statement did not alter Putter's timely awareness

of the facts requiring him to make further inquiry before the statute of limitations expired. We note that, although the record reflects that certain individuals at North Shore were aware of Dr. Hall's illness, there is no indication that they allowed him to continue performing surgeries knowing that he posed a danger to patients.

As a result, additional discovery is not required under CPLR 3211 (d). We disagree with the Appellate Division's holding that the plaintiffs demonstrated a reasonable basis to believe that with additional discovery they would be able to develop sufficient facts to sustain their equitable estoppel claim (25 AD3d 539, 540 [2006]). Since Putter had sufficient timely knowledge of the facts, was aware of the basis of a cause of action within the applicable statute of limitations and failed to bring a timely suit, further discovery is not necessary.

Accordingly, the order of the Appellate Division should be reversed, with costs, defendants' motion to dismiss the complaint should be granted and the certified question should be answered in the negative.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ, SMITH and PIGOTT concur.

Order reversed, etc.